**Orza SALONE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 34A02–9410–CR–00608.**

Court of Appeals of Indiana.

July 11, 1995.

Rehearing Denied Sept. 21, 1995.

Transfer Denied Nov. 29, 1995.

William C. Menges, Jr., Howard County Public Defender, Kokomo, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

Orza Salone appeals his conviction of four counts of Criminal Deviate Conduct,[1] class A felonies, four counts of Confinement,[2] class B felonies, and two counts of Aggravated Battery,[3] class B felonies. Salone presents the following restated issues for review:

I. Did the trial court err in admitting State's Exhibits 7, 12, and 17?

II. Did the trial court err in not restricting the cross-examination of witness T.F.?

III. Did the trial court err in denying Salone's motion for continuance?

IV. Did the trial court err in refusing to give Salone's tendered instruction regarding lesser included offenses?

V. Was the evidence sufficient to sustain Salone's convictions of aggravated battery?

VI. Does IC 35–42–2–1.5 violate the equal protection clauses in the Indiana Constitution and the United States Constitution?

VII. Did the trial court err in sentencing Salone for both criminal deviate conduct and confinement regarding each victim?

VIII. Did the trial court err in imposing enhanced and consecutive sentences?

We affirm in part, reverse in part, and remand with instructions.

The facts favorable to the judgment are that on September 28, 1993, Salone and Troy Moore were staying at the home of two of the victims, T.F., a female, and J.B., a male. Also present that evening were the other two victims, R.P. and his wife C.P. While Moore and Salone were away from the house, T.F. discovered in Salone's room a rock of crack cocaine which was "nearly as big as an egg." *Record* at 546. T.F. cut off a portion of the rock and returned the remainder. The victims then ingested the cocaine and drank alcohol. At approximately 7:30 p.m., Moore and Salone and a woman arrived at the house and went into Salone's bedroom to eat, where Salone discovered that some of the crack cocaine was missing. Salone armed himself with a shotgun and demanded to know who had his cocaine. After shouting at T.F., Salone directed the victims into the living room, where

"[h]e just started going off and saying he wanted his [cocaine] and nobody was leaving, everybody was going to die and started looking around at everybody, pointing the gun at their heads...." *Record* at 385.

Salone then began throwing things around the room and breaking objects, including a

1. Ind.Code 35–42–4–2(1).

2. IC 35–42–3–3(1).

3. IC 35–42–2–1.5.

television, with a hammer. Salone struck T.F. several times with a gun. The victims were ordered to disrobe at gunpoint. While Salone was holding the gun, each victim was ordered to perform various sexual acts with each of the other victims, including oral and anal sex.

At some point, C.P. told Moore and Salone that T.F. had been the one who retrieved the crack cocaine from Salone's room. With Salone still holding the gun, Moore went into the kitchen and retrieved a knife. Moore held the knife over the stove until it was red-hot, then came back into the living room and forced R.P. to hold the knife blade. Moore threatened to shoot R.P. if he did not comply. Moore repeated this procedure four more times, forcing J.B. to hold the knife once and T.F. to hold the knife three times. J.B. was ordered to insert a hammer handle into T.F.'s vagina. While J.B. complied, Moore beat T.F. in the head with a VCR tape. The victims were then ordered to lie face down on the floor and were beaten with a stick by Moore while Salone held the gun.

The victims were ordered to get dressed. Salone then ordered C.P. to "start beating [T.F.] up." *Record* at 491. When asked how many times C.P. subsequently struck T.F., J.B. responded, "Bunch. Then she picked up a piece of wood and hit her with that a few times, too." *Id.* Salone then handed the gun to Moore and challenged R.P. to fight. The fight did not last long, however, because R.P. did not fight back. The victims were ordered to go into the basement and the basement door was barricaded shut.

The next morning, J.B. was let out of the basement and ordered to drive Moore, Salone, and the woman to Detroit. The four remained in Detroit for four days. While in Detroit, someone called back to Kokomo and discovered that C.P., R.P., and T.F. had escaped from the basement. J.B. was allowed to return to Kokomo by bus.

Salone was charged with four counts of criminal deviate conduct, four counts of confinement, and two counts of aggravated battery. Salone was convicted on all counts following a jury trial and sentenced to an aggregate term of 180 years.

I

Salone argues that the trial court erred in admitting Exhibits 7, 12, and 17.

A

■ Exhibit 12 is a photograph of T.F. lying on her back in a hospital bed, with her left arm extended up in the air and her open palm facing the camera. The exhibit was introduced to show the extent and nature of T.F.'s injuries, and reveals extensive contusions on T.F.'s face and arm and severe burns on the palm of her hand. Exhibit 7 is an enlargement of a portion of Exhibit 12, focusing on the burns on the left hand. Salone concedes that either picture, by itself, would be admissible, but contends that introduction of both was cumulative and "unfairly and prejudicially emphasize[d] this single piece of evidence." Appellant's Brief at 7.

■ The admissibility of photographs is committed to the trial court's discretion and will be disturbed only for abuse of discretion. *Jackson v. State* (1992), Ind., 597 N.E.2d 950, *cert. denied*, —— U.S. ——, 113 S.Ct. 1424, 122 L.Ed.2d 793. In order to establish error, a defendant must show that the improper influence of the photographs outweighed their probative value so as to render them unduly prejudicial. *Schweitzer v. State* (1989), Ind., 531 N.E.2d 1386. In the instant case, it is incumbent upon Salone to demonstrate that the cumulative effect of seeing both photographs, as opposed to only one, prejudiced the jury against Salone to such an extent as to outweigh the probative value of the exhibits.

The jury viewed a total of five photographs taken of T.F. in the hospital shortly after the attack. In addition to Exhibits 7 and 12, Exhibit 8 depicted extensive cuts and contusions on T.F.'s right leg. Exhibit 9 depicted extensive cuts and contusions on T.F.'s right arm and hand. Exhibit 10 depicted extensive cuts and contusions on the portions of T.F.'s left arm, hand, and fingers which were not visible in Exhibits 7 and 12. We conclude that, in view of the number and character of the photographic exhibits properly in evidence, the prejudicial effect, if any, of Exhibit 7, an enlargement of a portion of

Exhibit 12, did not outweigh its probative value. The trial court did not abuse its discretion in admitting Exhibits 7 and 12.

**B**

█ Salone contends that the trial court erred in admitting Exhibit 17, a letter written to T.F. and J.B. by Salone while Salone was in the Howard County Jail awaiting trial. Salone contends the trial court erred because the State failed to establish the letter's authenticity.

█ Proof of authentication is required before documents may be admitted. *Brooks v. State* (1986), Ind., 497 N.E.2d 210. The admissibility of documents is within the trial court's discretion and will be reversed only upon a showing of abuse of discretion. *Id.* With regard to the sufficiency of proof of authentication, our supreme court has stated:

"Authentication has been deemed sufficient when the witness knew the alleged author and had corresponded with him, and where the envelope bore the author's return address and the letter contained familiar references and the author's signature." *Id.* at 216.

*See also* Indiana Rules of Evidence, Rule 901(b)(4).

T.F. testified that Exhibit 17 was a letter she and J.B. had received from Salone. The letter arrived in an envelope which bore a red stamped inscription stating, "This stamp identifies this correspondence as having been mailed by an offender incarcerated at the Howard County Jail." *Record* at 584. The letter described in detail, and demanded the return of, certain personal belongings of Salone's which were left in T.F. and J.B.'s home. Finally, the letter was signed "Orza Donutts", which was a nickname of Salone's. T.F.'s testimony concerning the letter and the contents of the letter itself supplied sufficient authentication to support the admission of Exhibit 17.

**II**

█ Salone contends the trial court erred in restricting the scope of cross-examination of T.F. in the following instance:

"Q: T.F., your last name's [F.]?

A: Yes.

Q: So when you told the hospital your last name was [B.] you were lying?

A: I never told—". *Record* at 12.

The State objected to the question and the objection was sustained.

Our supreme court has stated:

"Since the trial judge is in the best position to observe the trial proceeding, the trial judge should control the extent of cross-examination and accordingly will be reversed only on an abuse of discretion. [Citation omitted.] *To show abuse of discretion, a defendant must demonstrate how he was prejudiced by the court's actions.*" *Corbin v. State* (1990), Ind., 563 N.E.2d 86, 90 (quoting *Johnson v. State* (1988), Ind., 518 N.E.2d 1073, 1075) (emphasis supplied).

Even assuming for the sake of argument that the trial court erred in sustaining the objection, we cannot discern any resulting prejudice to Salone. Salone's brief argument on this issue fails even to claim prejudice, much less identify its nature. Salone has failed to demonstrate error. *Corbin, supra.*

**III**

Salone anticipated that his mother and sister would testify on his behalf at trial. However, as the trial neared conclusion, neither his mother nor his sister were present at trial. Salone submitted an oral motion for continuance in order to permit Salone to secure the attendance of the witnesses. Salone contends that the trial court erred in denying the motion for continuance.

█ Salone contends that the motion for continuance was made pursuant to Ind. Code 35–36–7–1 and governed by the provisions contained therein. Unlike other continuance motions whose dispositions are purely discretionary, motions made pursuant to IC 35–36–7–1 should be granted when specific criteria are met. However, IC 35–36–7–1 motions "may be made only on affidavit showing: (1) that the evidence is material; (2) that due diligence has been used to obtain the evidence; and (3) the location of the evidence." IC 35–36–7–1(a). Salone's mo-

tion was submitted orally and was unaccompanied by affidavit. Therefore, the motion did not comply with IC 35–36–7–1 and the decision whether to grant the motion was committed to the trial court's discretion, and will be reviewed only for abuse of discretion. *Rhinehardt v. State* (1985), Ind., 477 N.E.2d 89. In order to show abuse of discretion the record must reveal that the trial court's ruling resulted in prejudice to the movant. *Welch v. State* (1990), Ind.App., 564 N.E.2d 525.

■ After submitting his motion, Salone's counsel made an offer to prove. Counsel stated that Salone's sister and mother would testify that J.B. was a guest in their home when he stayed in Detroit with Moore and Salone, and during that time J.B. did not appear to be in fear, nor did he indicate that he was being held there against his will. Salone's sister also would allegedly have testified that she was with Salone shortly before the events in question, and that Salone sold an automobile for two thousand dollars in cash.

We presume that the purpose of the proposed testimony that J.B. did not display fear while in Detroit was to refute the inference that he was present in that city as a result of illegal compulsion on Salone's part. However, the charging information did not contain allegations regarding offenses which were committed in Detroit. Therefore, testimony concerning activities occurring in Detroit was not material to the charges against Salone. The absence of immaterial evidence did not prejudice Salone. *See Brumley v. State* (1986), Ind., 492 N.E.2d 281.

The purpose of testimony concerning the sale of a car for cash is not clear. Counsel did not clarify the purpose of such testimony while making his offer to prove at trial, nor does Salone explain the testimony's relevance in his appellate brief. In view of the particular charges against which Salone was defending, we fail to discern the relevance of testimony concerning the cash sale of a car in Kokomo. Salone has failed to demonstrate that the absence of this evidence prejudiced his defense. *See id.* The trial court did not err in denying the motion for continuance.

## IV & V

Salone contends that the trial court erred in refusing two instructions tendered by Salone and that the evidence was insufficient to support the aggravated battery convictions. The latter contention is based upon the sufficiency of the evidence with regard to the injury element of the offense. Specifically, Salone contends that the evidence was insufficient to prove that T.F. and J.B. suffered permanent disfigurement or protracted impairment. We address the contentions together because they are interrelated.

■ The giving of an instruction lies within the trial court's discretion and will be reviewed only for abuse of discretion. *Hicks v. State* (1989), Ind., 536 N.E.2d 496. A court is required to instruct the jury regarding lesser included offenses only when both steps of a two-step test are met.

"The first step may be satisfied in either of two ways. An offense may be included if all the statutory elements of the lesser offense are inherently part of the statutory definition of the greater offense. In the alternative, an offense may be included if the charging instrument reveals that the manner and means used to commit the essential elements of the charged crime include all the elements of the lesser crime." *Jones v. State* (1988), Ind., 519 N.E.2d 1233, 1234.

An examination of the statutory definitions reveals that all of the elements of battery, i.e., (1) knowing or intentional, (2) touching, (3) in a rude or offense manner, are necessarily included in the definition of the greater offense of aggravated battery. Therefore, the first step is satisfied.

■ The second step involves an examination of the evidence pertaining to the element or elements which distinguish the greater offense from the lesser offense. "If that evidence on the distinguishing elements has substantial probative value and is not in serious dispute, the instruction on the lesser offense should be refused to avoid the potential of a compromise verdict." *Id.* at 1234. Necessarily incorporated into our discussion of the second step of the analysis is a review of the sufficiency of the evidence supporting

the aggravated battery convictions. When reviewing the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility, but examine only the evidence favorable to the judgment, together with the reasonable inferences to be drawn therefrom. *Jenkins v. State* (1993), Ind., 627 N.E.2d 789, *cert. denied,* —— U.S. ——, 115 S.Ct. 64, 130 L.Ed.2d 21.

■ The element which distinguishes aggravated battery from battery is the nature of the injury caused by the touching. Salone sought to instruct the jury on the lesser offenses of battery as a B misdemeanor (no injury), an A misdemeanor (bodily injury), and a C felony (serious bodily injury). Aggravated battery, on the other hand, requires proof of an injury that "creates a substantial risk of death or causes serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ". Therefore, the jury should not have been instructed on the lesser included offense of battery if there was substantial evidence of probative value that T.F. or J.B. suffered serious permanent disfigurement or protracted loss or impairment of the function of their hand as a result of being forced to grasp the hot knife.

■ T.F. testified that as a result of the burns to her hands, which are depicted in photographs in the record and appear to have been much more serious than J.B.'s, she was unable to use her hand for fourteen to sixteen weeks. This comprises substantial evidence of probative value that T.F. suffered an injury which caused protracted loss or impairment of the function of her hand and no reasonable trier of fact would conclude otherwise. Therefore, with regard to the aggravated battery conviction based upon forcing T.F. to grasp the hot knife, the trial court's refusal to instruct the jury on the lesser offense of battery was not error. T.F.'s testimony, in addition to being sufficient to justify the refusal to instruct on the lesser offense, was also sufficient to prove the injury element of aggravated battery, which is the only element that Salone contends was lacking. Therefore, the evidence was sufficient to support the aggravated bat-

tery conviction relating to the burning of T.F.

■ Dr. Blain Farley was the physician who treated T.F. and J.B. in the emergency room. Dr. Farley testified that J.B. suffered a "pretty severe burn", *Record* at 369, on the palm of his right hand that would take "longer to heal" and "usually ... have more complications", *id.,* than if it were on a different area of the body. Dr. Farley also testified that such burned skin "can" constrict, and a "lot of times" cause secondary contraction which "maybe" will result in an inability to fully expand the hand, thus "usually" necessitating physical therapy. *Id.* In addition to Dr. Farley's testimony, the State introduced photographs of J.B.'s hand which depicted the blistering that resulted from grasping the knife.

Dr. Farley's testimony supplied what can only be described as equivocal testimony concerning the severity of J.B.'s burns. Dr. Farley testified primarily in the abstract, describing the general effect, treatment, and prognosis of burns such as J.B.'s, but discussing only briefly J.B.'s burns themselves. Although describing the burns as "pretty severe", Dr. Farley did not discuss either the disfigurement, if any, which might result or the severity or duration of functional impairment which J.B.'s burns would cause. The photographs, which comprise the only other evidence related to J.B.'s burns, do not reflect either an obvious disfigurement or functional impairment of J.B.'s hand. The record therefore does not contain evidence of probative value proving that J.B. suffered serious permanent disfigurement or protracted impairment of the function of his right hand as a result of the burns he received from grasping the knife. Accordingly, as to J.B., the trial court erred in refusing to instruct the jury on the lesser included offense of battery.

■ The lack of evidence of disfigurement or impairment not only fell below the quantum of proof necessary to refuse the instruction on the lesser offense, but also constitutes a fatal deficiency in the State's proof of the injury element of aggravated battery. Therefore, the aggravated battery

conviction based upon forcing J.B. to hold the hot knife must be reversed.[4]

## VI

Salone contends that IC 35–42–2–1.5 is violative of the equal protection guarantees of the Indiana and United States Constitutions. Salone essentially argues that because the battery and aggravated battery statutes proscribe the same conduct, the imposition of different penalties by each statute violates equal protection.[5]

In *Comer v. State* (1981), Ind.App., 428 N.E.2d 48, we set out the analysis when considering equal protection challenges to overlapping criminal statutes based upon disparity in penalties.

"Under the federal constitution, overlapping statutes which carry differing penalties do not violate due process so long as each statute gives fair notice of the essential elements of the offense and the penalty for its violation. Furthermore, equal protection under such statutes requires only that the two statutes are not utilized to treat different recognizable classes differently." *Id.* at 55.

Our focus when addressing challenges such as Salone brings here, whether under the state or federal constitution, is therefore not upon the fact that different penalties are imposed for the same act under two different criminal statutes, but rather upon whether distinct classes are treated differently under the two statutes.

Salone does not contend that the State's decision to charge him with aggravated battery, as opposed to battery, was based upon Salone's membership in a distinct class. Moreover, the record would not support such a contention. We discern nothing indicating that the decision to prosecute Salone for aggravated battery was motivated by any-

thing other than a belief that the severity of the injuries to T.F. and J.B. justified charging Salone with the greater offense. We conclude that the statutes were not utilized in the instant case for the purpose of treating Salone differently based upon his membership in a distinct class. Therefore, there was no violation of equal protection. *Id.*

## VII

Salone contends that the trial court erred in convicting him of both confinement and criminal deviate conduct with regard to each victim.

We note that Salone's argument upon this issue is comprised of one conclusory sentence. While we do not suggest that the quality of a legal argument is directly proportionate to its length, there is a minimum threshold which must be crossed in order to adequately support a contention upon appeal. Rule 8.3(A)(7) of the Indiana Rules of Trial Procedure requires that an argument in an appellate brief shall contain

"the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities . . ., and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review."

Salone's brief, conclusory argument falls demonstrably short of the requirements of App.R. 8.3(A)(7) and the argument is waived. *Huff v. State* (1983), Ind.App., 443 N.E.2d 1234. Even were it not waived, however, the argument is without merit.

Where the crime of criminal deviate conduct is charged as having been accomplished by force, the charge necessarily includes the crime of confinement to the extent force, or threat of force, effectuates the crim-

---

4. We note that there was substantial evidence of probative value that Salone committed battery on J.B. in forcing him to grasp the hot knife. There remained a question of fact, however, regarding the severity of the injury suffered by J.B. as a result of the battery. As a result, we are unable to determine as a matter of law what offense, i.e., A misdemeanor or C felony battery, Salone committed upon J.B. and cannot remand with instructions to enter conviction of a lesser offense.

5. "With the exception of the inclusion of 'unconscious' and 'extreme pain' [in the definition of aggravated battery], the proscribed conduct is either a Battery, a Class C felony or Aggravated Battery, a Class B felony, dependent only on the whim of the drafter of the charging information. Because of the disparate penalties available for the same activity charged against the defendant in this cause, his equal protection rights have been violated." Appellant's Brief at 19.

inal deviate conduct. *See Webster v. State* (1994), Ind., 628 N.E.2d 1212. "Any other confinement of the victim beyond that inherent in the force used to effectuate the [criminal deviate conduct] constitutes a violation of the confinement statute apart from the violation inherent in the offense" of criminal deviate conduct. *Id.* at 1214.

■ The evidence in the instant case revealed that on September 28 the victims were confined and ordered to disrobe in order that Salone could search their clothes for the missing crack cocaine. After the sexual offenses were committed, Salone ordered the victims to get dressed and then ordered them to strike one another. Finally, the victims were locked in the basement, where they remained until J.B. was taken to Detroit and the other three escaped. The confinement of the victims was not coextensive with the criminal deviate conduct, but instead went beyond that necessary to accomplish the criminal deviate conduct. Accordingly, the confinement convictions do not violate Salone's right against double jeopardy. *Id.; see also McElroy v. State* (1992), Ind.App., 592 N.E.2d 726, *trans. denied.*

## VIII

Salone contends upon two bases that the trial court erred in imposing enhanced, consecutive sentences. Salone first contends that the trial court cited invalid aggravators in support of the sentence imposed. Secondly, Salone contends that the sentence violates Ind.Code 35–50–1–2(a).

## A

■ A trial court has wide discretion in sentencing and upon review we will not set aside or alter a sentence that is within statutory limits unless the record reveals a manifest abuse of discretion. *Arthur v. State* (1986), Ind., 499 N.E.2d 746. The trial court also has wide discretion to enhance the presumptive sentence, can use the same factor to both enhance a sentence and impose consecutive sentences, and is not limited to the statutory aggravating factors listed in IC 35–38–1–7.1(b). *McCoy v. State* (1991), Ind., 574 N.E.2d 304.

■ In the instant case, the trial court listed the following aggravating factors:

"(1) although the defendant was not charged with dealing drugs, it is evident from the testimony that he came from the Detroit area for the purpose of dealing in drugs which the court finds aggravating in that the defendant had no ties to this community, no relatives in this community, and made arrangements with people and moved in with them. The defendant moved to Kokomo for a short period of time, in the court's opinion to deal or be involved in drug dealing, which precipitated this entire offense which resulted in serious injuries to the victims; (2) the repeated acts over a number of hours against the four victims in this cause was of a most heinous nature; (3) the sheer ruthlessness and brutality of what took place; (4) the extreme physical and mental anguish caused to the victims which continues to the present time; (5) that there is no indication of any remorse or rehabilitation status by the defendant and that the prior offenses of the defendant has escalated over a period of time to more serious offenses. The court finds that the number of offenses and the number of victims and the type of offenses weigh heavily and that any lesser sentence would seriously diminish the seriousness of this cause and the acts that took place." *Record* at 226–27.

The first factor cited by the court, the fact that Salone's presence in Kokomo was motivated only by Salone's intent to engage in illegal drug dealing, is questionable. However, the final four factors are valid aggravators.

"The nature of the crimes and the manner in which the crimes were committed may be considered as aggravating circumstances." *Concepcion v. State* (1991), Ind., 567 N.E.2d 784, 791. Factors (2)–(4) refer to the nature and manner of the criminal offenses committed by Salone and the effect of the crimes on the victims. In view of the patently sadistic nature of the criminal deviate conduct offenses committed by Salone, the trial court did not err in identifying this as an aggravating factor.

■ Factor (5) actually identifies two aggravating factors, Salone's lack of remorse and his criminal history. Our supreme court has held that, with one exception, lack of remorse is a valid aggravating circumstance. *Dinger v. State* (1989), Ind., 540 N.E.2d 39. The lone exception to the rule, when the defendant maintains innocence and the only evidence is the victim's uncorroborated testimony, *see Dockery v. State* (1987), Ind.App., 504 N.E.2d 291, is inapplicable in the instant case. The court did not err in identifying lack of remorse as an aggravating factor.

■ Prior criminal history has also been recognized as a valid aggravating factor to justify an enhanced sentence. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370. In fact, an enhanced sentence may be imposed based upon criminal history as the lone aggravating factor. *See id.*

In summary, even assuming for the sake of argument that factor (1) was not a valid aggravating factor, the imposition of enhanced sentenced was nevertheless supported by sufficient valid aggravating circumstances. The trial court did not err in imposing enhanced sentences.

### B

■ Salone contends that the imposition of consecutive sentences totalling 180 years violated IC 35–50–1–2, which provides, in pertinent part:

"Except as provided in subsection (b), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances in IC 35–38–1–7.1(b) and IC 35–38–1–7.1(c) in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. *However, except for murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 [habitual offender statute] and IC 35–50–2–10 [habitual substance offender statute], to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.*" (Emphasis supplied.)

The highlighted portion of IC 35–50–1–2 is part of a legislative amendment to the statute which was added in 1994 and which represents a previously nonexistent restraint upon a trial court's discretion when imposing consecutive sentences.

In order to impose consecutive sentences consistent with the provisions of IC 35–50–1–2, the court must first identify "the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." IC 35–50–1–2(a). The greatest offense of which Salone was convicted was criminal deviate conduct as a class A felony. The offense classification which is one class higher than an A felony is murder, which calls for a presumptive sentence of fifty years.

■ The trial court must next separate the convictions into two categories. The first category is comprised of murder and crimes for which the penalty is enhanced by virtue of the infliction of serious bodily injury. The second category includes all felony offenses not included in the first category. As discussed previously, the crime of aggravated battery differs from the crime of battery in that the former is enhanced to a B felony because of the infliction of a more serious bodily injury upon the victim. Although the aggravated battery statute does not employ the phrase "serious bodily injury", it is clear that the injury element described therein is of a more serious nature than the "serious bodily injury" element of C felony battery. Thus, aggravated battery is an offense which belongs in the first category of crimes set out above, i.e., a crime for which the penalty is enhanced by virtue of the infliction of serious bodily injury. In the instant case, the aggravated battery conviction relating to the burn-

ing of T.F.'s hand is the only valid conviction which fits in the first category.

After determining the classification of offenses and identifying the presumptive sentence for the next greater classification of offense, the court still has the discretion to impose consecutive sentences for crimes in the second category, provided that the total term of the consecutive sentences does not exceed the presumptive sentence for the next greater offense. In the instant case, the court retained the discretion to impose consecutive sentences for the four criminal deviate conduct convictions and the four confinement convictions. However, the total term of such consecutive sentences could not exceed the presumptive sentence for murder, which is fifty years. Accordingly, the 180–year sentence imposed by the trial court runs afoul of the provisions of IC 35–50–1–2(a) and must be set aside. Finally, we note that the court retains the discretion under IC 35–50–1–2(a) to order that the sentence for each crime belonging in the first category, as set forth above (in this case, aggravated battery), be served consecutively to the total sentence imposed for crimes in the second category.

The conviction for aggravated battery stemming from the burning of J.B.'s hand is reversed. The sentence imposed by the trial court is set aside and this cause is remanded with instructions to resentence Salone consistent with the principles set out in this opinion. In all other things, the trial court is affirmed.

Judgment affirmed in part, reversed in part, and remanded with instructions.

RILEY, J., concurs.

SULLIVAN, J., concurs as to parts I, II, IV, V, VI and VIII(A) and (B) and concurs in result as to parts III and VII.