Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



Jul 08 2013, 9:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW J. BALDWIN**
Baldwin, Adams & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL PAUL FOSTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1209-CR-414 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Marc R. Kellams, Judge
Cause No. 53C02-1102-FB-128

**July 8, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Daniel Paul Foster ("Foster") appeals his convictions and sentence following a jury trial in Monroe Circuit Court in which he was found guilty of Class B felony aggravated battery, Class C felony battery resulting in serious bodily injury, two counts of Class D felony battery resulting in bodily injury to a penal facility employee, and Class A misdemeanor criminal mischief. Foster argues that the trial court abused its discretion by failing to tender his proposed instruction for the Class B felony aggravated battery charge to the jury, that the State failed to present sufficient evidence to convict him of Class B felony aggravated battery, and that his twenty-six year aggregate sentence was inappropriate.

We affirm.

### Facts and Procedural History

On February 16, 2011, Foster was an inmate at the Monroe County Jail, awaiting sentencing for attempted murder and criminal recklessness convictions. Foster's mother was scheduled to arrive for a video-monitoring visit[1] at 2:30 p.m., but after she arrived approximately one to two minutes late, the visit was cancelled. At the time, Foster was in cell block D, awaiting his visit. After learning that the visit was cancelled, Foster became angry and ripped the phone receivers and monitors from the wall, causing a stipulated $330 in damage.

Following that outburst, Officer Sarah Dennison ("Dennison"), who was on post outside the cell block, called for other officers to assist her. Other officers arrived shortly

---

[1] Inmates at the Monroe County Jail use monitors and phone receivers to conduct visits with guests, rather than having face-to-face meetings. Guests still come to the jail for the visit, but the video monitors allow the inmates to have the visit from their cell block, rather than a separate visitation area.

thereafter, and Foster was told that he would have to pay for the damage he had caused, and also that he would be moved to a more secure cell block, C. Dennison escorted Foster back to his cell on the upper tier of cell block D so that he could pack his belongings. Officer Brian Creech ("Creech") waited at the door to cell block D.

While packing, Foster became "riled up" when a fellow inmate began to make statements about how the officers' treatment of Foster was unfair. Tr. pp. 291-92. Foster threw down his belongings and began cussing at and threatening the officers on the main level from the balcony. Foster then turned around, ran down the stairs and charged at Creech. As Foster reached his arm back to aim a punch at Creech, Officer Jennifer Russ ("Russ") stepped between the men. Foster's punch struck Russ in the shoulder and then landed a glancing blow on Creech's head.

Dennison then grabbed Foster's arms from behind in order to calm him and turn him around to walk back up the stairs. As Dennison followed Foster, she overheard someone say something about the cancelled visitations and observed Foster begin to make a quick turn. Concerned that Foster would become violent again, Dennison jumped on Foster's back and wrapped her arms around him from behind.

Foster turned his head and told Dennison, "Get off of me!," and shifted his body weight.[2] Tr. pp. 298-99. Foster was then able to slide his foot behind Dennison's left foot, which she had planted on the ground. Dennison was trapped and unable to move, and Foster then grabbed her, and "forcefully twisted and pulled" her body. Tr. pp. 301, 332, 339. Dennison felt extreme pain and heard a "popping and cracking" noise that

---

[2] Foster is six feet tall, and weighs approximately two hundred and fifty pounds. Dennison is five feet, six inches tall, and weighs approximately one hundred and fifty pounds.

alerted her that her knee was severely injured. Tr. p. 301. She fell to the floor, screaming in pain before other officers carried her from the cell block.

As a result of the incident, Creech and Russ reported minor injuries; Creech experienced swelling and bruising, while Russ received physical therapy to regain full motion of her shoulder. Dennison suffered a severed anterior cruciate ligament ("ACL"), a "high grade sprain" of the medial collateral ligament ("MCL"), and a torn lateral meniscus. Tr. pp. 303-04, 374-75. Her torn ACL required surgery, and then one to one-and-a-half months on crutches, five to six months of physical therapy and an additional five to six months of recovery time. Dennison returned to work in April or May of 2011[3] but was on limited duty for one month following her return.

The state charged Foster on February 25, 2011, with two counts of Class B felony aggravated battery, one count of Class C felony battery resulting in serious bodily injury, two counts of Class D felony battery resulting in bodily injury to a penal facility employee, and criminal mischief as a Class A misdemeanor. The State dismissed one count of aggravated battery before the jury trial.

On July 13, 2012, a jury found Foster guilty of all remaining charges. The trial court concluded that the conviction for Class C felony battery resulting in serious bodily injury should be merged with the conviction for Class B felony aggravated battery for the purposes of sentencing. On August 14, 2012, the trial court sentenced Foster to an aggregated twenty-six years executed in the Department of Correction: twenty years for Class B felony aggravated battery, three years each for the two counts of Class D felony

---

[3] Dennison was unable to recall the exact date of her return to work at trial.

battery resulting in bodily injury to a penal facility employee (to be served consecutively to each other and to the twenty year sentence for Class B felony aggravated battery), and one year for Class A misdemeanor criminal mischief (to be served concurrently to the other sentences).

Foster now appeals.

## I. Jury Instruction for Aggravated Battery

Foster argues that the trial court abused its discretion by rejecting his proposed jury instruction for the Class B felony aggravated battery charge. We review a trial court's decision regarding jury instructions for abuse of discretion. Short v. State, 962 N.E.2d 146, 150 (Ind. Ct. App. 2012). When evaluating a trial court's rejection of an appellant's proposed jury instructions on appeal, this Court considers: (1) whether the proposed instructions correctly state the law, (2) whether there is evidence in the record to support giving the proposed instruction; and (3) whether the substance of the proposed instruction is covered by other instructions. Id. (citing Treadway v. State, 924 N.E.2d 621, 636 (Ind. 2010). We reverse a conviction only if the appellant demonstrates that the instructional error prejudices his or her substantial rights. Id.

Foster argues that the trial court's final instruction was "confusing, misleading and did not properly inform the jury as to the appropriate manner in which to apply the *mens rea* to the elements of that particular crime." Appellant's Br. at 5. However, Foster misconstrues this court's decisions regarding *mens rea* in aggravated battery.

Indiana Code section 35-42-2-1.5(2) defines the offense of Class B felony aggravated battery as follows:

5

> A person who knowingly inflicts injury on a person that causes protracted loss or impairment of the function of a bodily member or organ commits Aggravated Battery, a Class B felony.

A person engages in conduct knowingly if, while engaging in the conduct, he or she is aware of a high probability that he or she is engaging in such conduct. Ind. Code § 35-41-2-2. Foster correctly argues that the *mens rea* of "knowingly" applies to all of the conduct elements of the offense. However, he incorrectly classifies the offense's injury element as a conduct element.

In Salone v. State, 652 N.E.2d 552, 559 (Ind. Ct. App. 1995), trans. denied, our court held that "[t]he element which distinguishes aggravated battery from battery is the nature of the injury caused by the touching." The Salone court also held that aggravated battery differs from simple battery in that aggravated battery enhances the offense to a Class B felony because a more serious injury is inflicted upon the victim than in the case of a simple battery. Id. at 562. That is, aggravated battery's injury element is an aggravating circumstantial element, rather than an additional element of prohibited conduct. Therefore, Indiana Code section 35-42-2-1.5(2) does not require the State to prove that a defendant knew that his actions would cause any particular type of injury, but only that he or she knowingly would inflict an injury.

Foster's proposed instruction misconstrues this point of law and would have wrongly instructed the jury that:

> In order to convict Daniel Foster of Aggravated battery, the State must prove beyond a reasonable doubt that Daniel Foster was aware of the high probability that his conduct would lead to protracted loss or impairment of the function of a bodily organ, and that he consciously set out to engage in that conduct.

6

Appellant's App. p. 34. Foster correctly identifies the *mens rea* required to establish his culpability for the crime. But, he fails to distinguish between elements of prohibited conduct and the other elements of the crime.

In Maldonado-Morales v. State, 985 N.E.2d 25, 27 (Ind. Ct. App. 2013), our court also held that those elements are distinguishable. Importantly, "the culpability requirement applies only to the conduct elements. . . . In contrast, aggravating circumstances that increase the penalty for the crime must be proved beyond a reasonable doubt but do not require proof of culpability." D.H. v. State, 932 N.E.2d 236, 238-39 (Ind. Ct. App. 2010) (internal citations omitted) (citing Markley v. State, 421 N.E.2d 20, 21-22 (Ind. Ct. App. 1981) (finding that the culpability requirement did not apply to the aggravating circumstance of "serious bodily injury," enhancing a battery to a Class C felony)); see also Owens v. State, 742 N.E.2d 538, 542-43 (Ind. Ct. App. 2001) (holding that "bodily injury to a law enforcement officer" is an aggravating circumstance and requires no additional proof of culpability in order to increase the penalty). Therefore, in the case before us, the State was required to prove, beyond a reasonable doubt, only that Foster knowingly inflicted an injury on Dennison and that the injury resulted in protracted loss or impairment of the function of a bodily member or organ.

We also observe that Indiana Pattern Jury Instruction No. 3.13c prescribes an instruction for aggravated battery that distinguishes the elements of prohibited conduct and aggravating circumstantial elements of the offense:

The crime of aggravated battery is defined by law as follows:

A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes . . . protracted loss or

7

impairment of the function of a bodily member or organ . . . commits aggravated battery, a Class B felony.

Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:

1.  The Defendant
2.  knowingly or intentionally
3.  inflicted injury on (name person)
4.  and the injury . . .

   (caused: . . . [protracted loss or impairment of the function of (specify alleged bodily member or organ)] . . .

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of aggravated battery, a Class B felony.

As shown in this instruction, the *mens rea* requirement of "knowingly" is applied to the conduct element of "inflicted injury on" but not the circumstantial element of "protracted loss or impairment".

The trial court's final instruction in this case closely followed Pattern Instruction No. 3.13c. The trial court instructed, in pertinent part:

Indiana Code 35-42-2-1.5(2) provides in relevant part as follows:

A person who knowingly inflicts injury on a person that causes protracted loss or impairment of the function of a bodily member or organ commits Aggravated Battery, a Class B felony.

The Indiana Penal Code provides the following definitions, in relevant part, that you are to consider.

"Person" means a human being.

A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

Therefore, in order for you to convict the defendant, David Paul Foster, of the criminal offense in Count I of Aggravated Battery, as a Class B felony,

8

you must find beyond a reasonable doubt, that on or about February 16, 2011, in Monroe County, Indiana, he knowingly inflicted injury on Sarah Dennison that caused protracted loss or impairment of the function of a bodily member or organ.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Aggravated Battery, a Class B felony, as alleged in Count I.

Appellant's App. p. 19.

Foster's tendered instruction was an inaccurate statement of the law, and the trial court's given instruction was a correct statement of the law. Therefore, the trial court did not abuse its discretion when it refused Foster's tendered instruction. Moreover, the jury was properly instructed on the offense of aggravated battery, and therefore, Foster cannot demonstrate any instructional error that prejudiced his substantial rights

## II. Sufficiency of the Evidence for Aggravated Battery

Foster next argues that the State presented insufficient evidence to support his conviction for Class B felony aggravated battery. Our standard of review for a challenge to the sufficiency of the evidence is well settled. We will not reweigh evidence, nor will we consider the credibility of witnesses. Seketa v. State, 817 N.E.2d 690, 696 (Ind. Ct. App. 2004). Only evidence most favorable to the verdict, and those reasonable inferences that may be drawn therefrom will be considered. Neville v. State, 802 N.E.2d 416, 418 (Ind. Ct. App. 2004), trans. denied. An inference cannot be based on uncertain or speculative evidence, or evidence which raises a mere conjecture or possibility. Id. (citing Vasquez v. State, 741 N.E.2d 1214, 1216 (Ind. 2001)). When each material element of the charge is supported by evidence in the record from which a rational trier of

fact could have found guilt beyond a reasonable doubt, this court affirms the conviction. Id.

Foster argues that no reasonable trier of fact could have found that Foster knowingly inflicted injury on Dennison that caused protracted loss or impairment of a bodily member or organ absent an improper jury instruction. Foster claims that Dennison's injury was merely an unforeseeable result of Foster's reflexive reaction to Dennison jumping on his back.

Evidence that is relevant to demonstrate that a defendant engaged in criminal conduct knowingly includes: the duration of a defendant's actions, the brutality of the actions, and the relative strengths and sizes of a defendant and victim. Lush, 783 N.E.2d 1191, 1196 (Ind. Ct. App. 2003) (citing Childers v. State, 719 N.E.2d 1227, 1229 (Ind. 1999)). Thus, the State was not required to prove that Foster was cognizant of the exact type or severity of the injury that his knowing or intentional actions might cause.

Here, Officer Dennison was attempting to subdue Foster following his confrontation with the two other correctional officers. When Dennison grabbed Foster from behind, Foster slid his foot behind Dennison's, which was planted on the floor. Foster then grabbed Dennison's upper body pulling and twisting her such that he was able to exert substantial torque on her knee. Dennison, in fact, heard her knee crack and pop before she fell to the ground in pain. As a result, Dennison's ACL was severed, and she suffered a torn meniscus and sprained MCL. This evidence supports the jury's finding that Foster knowingly inflicted an injury on Dennison that resulted in the

protracted loss or impairment of the function of her knee, and we therefore affirm Foster's conviction for Class B felony aggravated battery.

### III. Appropriateness of the Sentence

Finally, Foster argues that his twenty-six year aggregate sentence is inappropriate. Under Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we may review and revise a sentence, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We must give "deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355–56 (Ind. Ct. App. 2011), trans. denied (quoting Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)) (internal quotation marks omitted).

When we review the appropriateness of a sentence, we consider "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell, 895 N.E.2d at 1224. The defendant has the "burden to persuade us that the sentence imposed by the trial court is inappropriate." Shell v. State, 927 N.E.2d 413, 422 (Ind. Ct. App. 2010). In addition, in

11

Buchanan v. State, our supreme court clarified the rule regarding the imposition of maximum sentences as follows:

> We have also observed that the maximum possible sentences are generally most appropriate for the worst offenders. This is not, however, a guideline to determine whether a worse offender could be imagined. Despite the nature of any particular offense and offender, it will always be possible to identify or hypothesize a significantly more despicable scenario. Although maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. But such class encompasses a considerable variety of offenses and offenders.

767 N.E.2d 967, 973 (Ind.2002) (internal quotation marks and citations omitted).

Class B felonies are punishable by a sentence between six and twenty years executed with a ten-year advisory sentence. I.C. § 35-50-2-5. Foster was sentenced to twenty years for Class B felony aggravated battery. The trial court ordered that the twenty-year sentence be served consecutively with two sentences of three years each for Foster's convictions for Class D felony battery resulting in bodily injury to a penal facility employee. Class D felonies are punishable by a sentence between six months and three years executed with an advisory sentence of one and one-half years. I.C. § 35-50-2-7. Foster's twenty-six year aggregate sentence[4] is the maximum allowed under the law.

A. *Nature of the Offense*

Concerning the nature of the offense, Foster argues that the incident lasted only a few seconds, and Dennison's serious injuries were unforeseen. Additionally, he contends that the individual three-year sentences he received for his two Class D felony

_____

[4] Foster was also ordered to serve a concurrent sentence of one year for his conviction for Class A misdemeanor criminal mischief.

12

convictions for battery of a penal facility employee were inappropriate, since they were the result of a single punch.

The nature of this offense is certainly not the worst that this court has reviewed or could be imagined. However, Foster did punch Officer Russ with sufficient force to cause Russ to require physical therapy in order to regain full use of her shoulder, and Officer Creech did experience bruising and swelling where the punch landed on his head. After injuring two other correctional officers, Foster then pulled and twisted Officer Dennison's much smaller body, causing a complex and painful knee injury from which she required surgery and nearly a full year of recovery in order to regain full strength and motion.

B. *Character of the Offender*

Foster makes no argument with respect to the nature of his own character, but notes only that "[t]he record is devoid of any character evidence of Daniel Foster *with the exception of his extensive criminal history.*" Appellant's Br. at 17 (emphasis added).

Included in the pre-sentencing report was information regarding Foster's extensive criminal background and other facts demonstrating his propensity for recidivism. Foster has a lengthy juvenile record, beginning at age twelve, including an adjudication for battery resulting in bodily injury. Foster's adult record includes a litany of offenses, including: felony burglary, resisting law enforcement, operating a motor vehicle without ever receiving a license, attempted murder, and criminal recklessness. On the date of the incident at issue in this case, Foster was awaiting sentencing for attempted murder and criminal recklessness convictions.

For all of these reasons, Foster's claim that his sentence is inappropriate fails. Accordingly, we affirm Foster's aggregate sentence of twenty-six years executed in the Department of Correction.

## Conclusion

For all of these reasons, we affirm the trial court's decision to reject Foster's proposed jury instruction regarding Class B felony aggravated battery. Additionally, the evidence is sufficient to support Foster's Class B felony aggravated battery conviction. Finally, Foster's twenty-six year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

BAKER, J., and MAY, J., concur.