Frank JAMES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A04–0101–CR–25.

Court of Appeals of Indiana.

Sept. 14, 2001.

228

Sarah L. Nagy, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Frank James appeals his convictions for Aggravated Battery, a Class B felony [1] and Resisting Law Enforcement, a Class D felony.[2] He argues that there is insufficient evidence to support his convictions and that they violate Indiana's Double Jeopardy Clause. Because we find that there is sufficient evidence to support his conviction for aggravated battery, we affirm that conviction. However, we find that his conviction for Resisting Law Enforcement vio-

lates the principles of double jeopardy, therefore, we reverse and remand to the trial court to vacate that conviction.

### Facts and Procedural History

On May 22, 2000, Officer Patrick Tudor of the Richmond Police Department was dispatched to the Eagle's Lodge in Richmond, Indiana. He and another police officer entered the Bingo Hall at the Lodge in search of James for whom they had a warrant. Officer Tudor knew and located James inside the Bingo Hall where he was sitting at a table with his girlfriend. Officer Tudor approached James and informed him that he needed to speak with him outside. After James denied that he was in fact Frank James, Officer Tudor told James that he had a warrant for his arrest. Eventually, James left the Bingo Hall with Officer Tudor.

Officer Tudor led James to a hallway. James' girlfriend followed the men into the hallway. Once in the hallway, James became agitated and argumentative. Officer Tudor attempted to place him in handcuffs, but James resisted. Eventually, Officer Tudor succeeded in placing him in the handcuffs. However, James continued to use profanity and pull away from Officer Tudor and toward his girlfriend.

Officer Tudor pulled James back and directed him to walk down a flight of stairs toward the exit of the building. When they reached the bottom of the stairs, James made a "quick, abrupt turn." Tr. P.114. As he did so, his elbow struck Officer Tudor in the mouth and knocked out one of Officer Tudor's top front teeth. The blow also loosened one of Tudor's bottom teeth.

After his tooth was knocked out of his mouth, Officer Tudor's mouth began bleed-

1. Ind.Code § 35–42–2–1.5.

2. Ind.Code § 35–44–3–3(a)(1); (b)(1)(B).

ing and he experienced pain. Officer Tudor's tooth was found on the ground and returned to him. He then proceeded to the hospital with his tooth. Officer Tudor stuffed tissues in his mouth to absorb the blood. He testified that it was very painful. At the hospital, a doctor attempted to reinsert his tooth into his jaw. Specifically, the doctor placed his arm around Tudor's head, grabbed the tooth, and shoved the tooth back into his mouth. Although the doctor attempted to reinsert the tooth two or three times, the tooth would not stay in Tudor's mouth. At that point, the doctor told Tudor there was nothing further he could do for him.

The next morning Officer Tudor went to a dentist. The doctor recommended that Officer Tudor see an oral surgeon to remove his bottom tooth that had been loosened by the impact of James's elbow. The oral surgeon surgically removed the bottom tooth. In addition, another tooth was knocked out of its normal alignment in his mouth and another tooth was broken in half.

Officer Tudor continued to need dental work as a result of the incident. He had several teeth filed down, as well as posts, fake teeth and a bridge inserted into his mouth. For approximately three to four months he wore a partial tooth. In addition, he still has a large hole in the top of his gum line where one tooth was surgically removed and he will need to have reconstructive gum surgery.

The State charged James with two counts of battery, one count of resisting law enforcement, and two counts of aggravated battery. Before trial, the State dismissed one count of battery. Following a jury trial, James was convicted of the four remaining counts. Due to double jeopardy violations, the trial court vacated the battery count and one of the counts of aggravated battery. Thus, James was convicted

of one count of aggravated battery and one count of resisting law enforcement. The trial court sentenced James to twelve years imprisonment with four years suspended for the aggravated battery conviction and three years imprisonment for the resisting law enforcement conviction. His sentences are to run concurrently. This appeal followed.

### Discussion and Decision

James argues that there is insufficient evidence to support his convictions. He also contends that his convictions for aggravated battery and resisting law enforcement violate the double jeopardy clause. We address each argument in turn.

#### I. Sufficiency of the Evidence

James argues that there is insufficient evidence to support his conviction for aggravated battery. In particular, he contends that the State failed to prove that he acted knowingly or intentionally and that Officer Tudor sustained permanent disfigurement. He also asserts that Officer Tudor's testimony is incredibly dubious.

■ When reviewing the sufficiency of the evidence, we neither reweigh evidence nor judge witness credibility. *Salone v. State*, 652 N.E.2d 552, 559 (Ind.Ct.App. 1995), *trans. denied*. Instead, we examine only the evidence favorable to the judgment, together with the reasonable inferences to be drawn therefrom. *Id.*

The State charged James with aggravated battery and specifically with "knowingly or intentionally inflict[ing] injury on Pat Tudor which created a substantial risk of death or caused serious permanent disfigurement, to-wit: the permanent loss of a number of teeth...." Appellant's App. P.23. Thus, in order to convict James of aggravated battery, the State was required to prove that James knowingly or intentionally inflicted injury on a person that

created a substantial risk of death or caused serious permanent disfigurement. Ind.Code § 35–42–2–1.5.

■■■ First, James argues that the State failed to prove that he acted knowingly or intentionally. Intent is a mental function. *Spann v. State,* 632 N.E.2d 741, 743 (Ind.Ct.App.1994). Absent an admission by the defendant, it must be determined from a consideration of the defendant's conduct and the natural and usual consequences thereof. *Id.* The trier of fact must resort to "reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, a showing or inference [of] the intent to commit that conduct exists." *Id.* (quoting *Metzler v. State,* 540 N.E.2d 606, 609 (Ind.1989)). Here, James was argumentative and agitated when Officer Tudor escorted him into the hallway. Once they were in the hallway, his resistance escalated as he tried to avoid being placed in the handcuffs. In addition, when they reached the bottom of the steps, James turned away from Officer Tudor with such force that he knocked one of Officer Tudor's teeth out and knocked several of his teeth loose with his elbow. Based on the surrounding circumstances the jury could reasonably infer that James possessed the necessary intent.

■■■ Next, James asserts that the State failed to prove that Officer Tudor suffered permanent disfigurement. Initially, we note that the phrase "permanent disfigurement" has not been defined by the legislature. Therefore, we must turn to our rules of statutory interpretation. *D.R. v. State,* 729 N.E.2d 597, 599 (Ind.Ct.App. 2000). The primary goal in interpreting the meaning of a statute is to determine and effectuate the legislative intent. *Id.* To determine legislative intent, courts must consider the objectives and the purposes of the statute in question and the consequences of the statute's interpretation. *Id.* We look to the plain language of the statute and attribute the common, ordinary meaning to terms found in everyday speech. *Herron v. State,* 729 N.E.2d 1008, 1010 (Ind.Ct.App.2000), *trans. denied.* In determining the plain and ordinary meaning of a statutory term, courts may use English language dictionaries as well as consider the relationship with other words and phrases. *State v. Eilers,* 697 N.E.2d 969, 971 (Ind.Ct.App.1998).

The word "permanent" is defined in relevant part as: "continuing or enduring without fundamental or marked change." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1683 (1993). The word "disfigure" is defined in part as: "to make less complete, perfect or beautiful in appearance or character: deface, deform, mar." *Id.* at 649. Based upon these definitions, we conclude that the legislature intended to protect against continuing or enduring injuries that mar or deface the appearance or physical characteristics of a person. At trial, Officer Tudor testified that initially one of his teeth was knocked out and could not be put back into his mouth. He testified further that one tooth was loosened to the point that it had to be removed and others were broken and had to be filed down. Although he was fitted with fake teeth, he continues to have a large hole in his gum line and has lost several of his original teeth. Based on his testimony, Officer Tudor has suffered disfigurement of his mouth that will last indefinitely. This is sufficient to establish permanent disfigurement.

Additionally, we note that in making this argument, James relies on *Salone v. State,* 652 N.E.2d 552 (Ind.Ct.App.1995), *trans. denied.* However, *Salone* is distinguishable from the present case. In *Salone,*

this court found that there was insufficient evidence to support the injury element of aggravated battery. J.B., the victim, suffered burns on his hands when forced to grasp a hot knife by the defendant. At trial, a doctor testified that J.B. suffered a "pretty severe burn" on his hand that would take "longer to heal" and that because the burns were on his hands it was usual to "have more complications." *Salone*, 652 N.E.2d at 559. The doctor also testified that "such burned skin 'can' constrict, and a 'lot of times' cause secondary contraction which 'maybe' will result in an inability to fully expand the hand, thus 'usually' necessitating physical therapy." *Id.* Upon review, we held that the doctor's testimony was insufficient to prove permanent disfigurement because the doctor provided equivocal testimony regarding the severity of J.B.'s burns and testified primarily about burns in the abstract without providing detail about J.B.'s injuries. In contrast, Officer Tudor testified unequivocally and specifically about his own injuries. In particular, he testified that he lost several teeth due to the incident with James and that he continues to have a large hole in his gum line. Therefore, the holding in *Salone* does not apply in this case and the State produced sufficient evidence to support James's conviction for aggravated battery.

Finally, James contends that Officer Tudor's testimony is incredibly dubious. In particular, he argues that Officer Tudor "could not articulate where he was standing when James struck him. He could not articulate even how James accomplished the task of knocking out his teeth when James' hands were handcuffed behind his back." Appellant's Br. P.7. However, the rule of incredible dubiosity is limited to cases where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of guilt. *Williams v. State*, 741 N.E.2d 1209, 1213 (Ind.2001). Here, Officer Tudor's testimony was not inherently contradictory or equivocal. He testified that James was uncooperative and verbally abusive. He testified further that as he walked down the stairs behind the defendant, James turned abruptly and hit him in the mouth with his elbow. Officer Tudor's testimony was not equivocal or contradictory. Thus, we are unconvinced by James's argument and affirm his conviction for aggravated battery.

## II. Double Jeopardy

Next, James argues his convictions for aggravated battery and resisting law enforcement violate Indiana's Double Jeopardy Clause.[3] Specifically, he argues that the same evidence was used to convict him of both charges.

Our supreme court set forth a two-part test for analyzing double jeopardy claims under our state constitution in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). In particular, our supreme court established that two or more criminal offenses violate our double jeopardy clause if with respect to either the statutory elements of the charged offenses or the actual evidence used to convict, the essential elements of one challenged offense establish the essential elements of the other offense. *Id.* at 49. Under the actual evidence test, the evidence presented at trial is examined to determine whether each offense was proven by separate and distinct facts. *Id.* at 53. To prove a claim under the actual

**3.** James does not allege that his convictions raise a federal double jeopardy issue. Accordingly, we do not address this.

evidence test, the defendant must demonstrate a "reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.*

Here, with regard to resisting law enforcement the State charged that "Frank James did knowingly or intentionally forcibly resist a law enforcement officer, to-wit: Officer Pat Tudor of the Richmond Police Department, while the officer was engaged in the execution of his duties as a law enforcement officer, the said Frank James inflicting bodily injury on Officer Pat Tudor . . . ." Appellant's App. P.23. With regard to aggravated battery, the State charged that "Frank James did knowingly or intentionally inflict injury on Pat Tudor which created a substantial risk of death or caused serious permanent disfigurement, to-wit: the permanent loss of a number of teeth . . . ." Appellant's App. P.23. According to James, there is a reasonable possibility that the same evidentiary facts used by the jury to establish the injury for aggravated battery may have also been used to establish the injury for resisting law enforcement conviction. We agree.

 The injury alleged by the State for the charge of aggravated battery was Officer Tudor's loss of teeth. This was the same injury that supported the resisting law enforcement charge. Thus, there is a reasonable possibility that the jury used the same evidence to convict James of both aggravated battery and resisting law enforcement. As a result, we remand to the trial court to vacate his conviction for

resisting law enforcement.[4] Because we reverse his conviction for resisting law enforcement, we need not address his argument that there is insufficient evidence to support this conviction.

Judgment affirmed in part and reversed in part and remanded to vacate the resisting law enforcement conviction.

DARDEN and MATHIAS, JJ., concur.

---

4. The State asks us to reduce the resisting law enforcement conviction from a Class D felony to a Class A misdemeanor. However, we decline to do so as this would require us to perform a fact finding function. Specifically, by reducing the charge to a Class A misde-

meanor, we would be finding that James resisted Tudor at another point in time that evening despite the fact that the State charged him with resisting at the point in time that the bodily injury occurred.