Terry L. LUSH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 03A01–0204–CR–129.

Court of Appeals of Indiana.

Feb. 25, 2003.

1192

Donald S. Edwards, Columbus, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, Indianapolis, IN, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Terry L. Lush ("Defendant") appeals his convictions of aggravated battery, a Class B felony, Ind. Code § 35–42–2–1.5, and neglect of a dependent, a Class B felony, Ind.Code § 35–46–1–4(b)(2).

We affirm.

### ISSUES

Defendant presents the following issues for our review that we restate as:

I. Whether the trial court abused its discretion by excluding testimonial evidence.

II. Whether there is sufficient evidence to sustain Defendant's conviction of aggravated battery.

III. Whether there is sufficient evidence to sustain Defendant's conviction of neglect of a dependent.

### FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment reveal that on September 20, 1996, Defendant was at home in Columbus, Indiana, looking after his two-year old son, and his two-year old stepdaughter, H.R. Defendant's wife, H.R.'s mother, was at work. H.R. seemed to be fine when H.R.'s mother, Angela, left the house for work. Angela came home for her lunch break at approximately 11:00 a.m. and was greeted by her daughter who was eating some breakfast cereal. Angela noticed nothing unusual about her daughter at that time and saw no injuries on H.R.'s body.

Angela had to be back at work by 11:15 a.m. Defendant and the children used the family vehicle to drive Angela back to work. Defendant returned home with the two children. A neighbor, Shauna Smith, testified that she was outdoors doing yard work from approximately 12:30 p.m. on and never saw the children playing in the front yard. However, she later saw Defendant leaving the house with H.R. in his arms and moving at a normal pace.

Defendant called Angela at work and asked her to meet him out front. Linda Baldwin, one of Angela's co-workers, testified that she and her husband were sitting outside from 1:30 p.m. to 1:45 p.m. during her last break. They saw the Defendant

drive up to the front of the building at a fairly normal speed and wait for Angela who came out to the car to talk with Defendant. They then saw Angela hurry back inside the business, and run back out to the car after a few minutes. While Angela was inside, the Baldwins saw Defendant shake H.R., who was in his lap, as if to wake her. As soon as Angela was seated in the car, Defendant handed H.R. to her, and they left the parking lot of the business fairly quickly.

At approximately 2:00 p.m. H.R. arrived at the hospital. She was unconscious and was not breathing. Dr. Fangman, a pediatrician, was paged to come to the emergency room regarding H.R.'s injuries. After conducting an initial examination of H.R., and consulting with Dr. Boaz of Riley Hospital, Dr. Fangman determined that it would be necessary to have H.R. flown by helicopter to Riley Hospital for surgery there. Dr. Luerrson, the director of pediatric surgery at Riley Hospital, did the initial examination of H.R. once she arrived there. He determined that her injuries were life-threatening. Dr. Boaz performed a craniotomy on H.R. to relieve the pressure on her brain from her head injury.

The medical testimony indicates that H.R. sustained linear bruising on her legs and her back. Her eyes were swollen and she had retinal hemorrhaging not consistent with an accidental injury. H.R. also exhibited substantial bruising on her face and neck. She had fading bruises on her arms and chest, but the coloration of the other bruises indicated that they had been formed recently. H.R. sustained an acute subdural hematoma that was collecting blood and was rapidly herniating her brain stem. That injury likely was inflicted by an angular momentum that rendered H.R. immediately unconscious. Those injuries appeared to have been inflicted within a few hours prior to H.R.'s arrival at the emergency room in Columbus, and a maximum of six hours prior to her arrival there. If left untreated, H.R. would have died. H.R. had to be placed in a medically induced coma for two weeks. A year later, H.R. has permanent damage to her brain and walks with a limp. She remains weak on one side of her body.

Defendant's jury trial began on January 30, 1998. On February, 4, 1998, the jury found Defendant guilty of aggravated battery and neglect of a dependent. Defendant was sentenced to a term of twenty years for commission of the aggravated battery, and a term of fifteen years, to be served consecutively to the sentence for aggravated battery, for commission of neglect of a dependent. This appeal ensued.

Additional facts will be provided as needed below.

## DISCUSSION AND DECISION

### I. EXCLUSION OF EVIDENCE

Defendant contends that the trial court committed reversible error by excluding the testimony of two witnesses, Patricia Goodlow and Shauna Smith, regarding Angela's treatment of H.R., and Angela's son's behavior. The trial court excluded the evidence from Patricia Goodlow as not being relevant to the case. The trial court excluded Shauna Smith's testimony about Angela's son's behavior as not being relevant to the case. Third, the trial court excluded Smith's testimony that Angela lifted H.R. by her arms, which was offered to explain some of the bruising on H.R.'s body.

■ A claim of error in the exclusion or admission of evidence will not prevail on appeal unless the error affects the substantial rights of the moving party. *McCarthy v. State*, 749 N.E.2d 528, 536 (Ind.2001). When reviewing such claims,

an appellate court determines whether the trial court abused its discretion when it ruled upon the evidence. *Id.*

During cross-examination of Shauna Smith, Defendant attempted to elicit testimony from Smith about Angela's son's alleged violent behavior. The trial court sustained the State's objection to that testimony on the basis that the evidence was irrelevant.

■ "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ind. Evidence Rule 401. Evidence which tends to show that someone else committed the crime logically makes it less probable that the defendant committed the crime, and thus meets the definition of relevance in Rule 401. *See Joyner v. State,* 678 N.E.2d 386, 390 (Ind.1997).

■ In the case at bar, Smith's cross-examination testimony, as it related to Angela's son's behavior, was irrelevant. At the time the objection was made, Defendant was trying to establish that someone else was responsible for H.R.'s injuries. More specifically, Defendant was trying to establish that Angela's son used a stick to beat on things, including the family dog. H.R. had sustained linear bruising on her legs and back. However, Angela's son was not present at the house at the time that H.R. received her life-threatening injuries. Therefore, any testimony concerning the son's behavior was irrelevant to the charges, aggravated battery and neglect of a dependent, against Defendant.

■ Also, during Smith's testimony, Defendant attempted to elicit from her evidence that Angela frequently picked up H.R. by the arms. H.R. had sustained bruises on her arms that were later described in the medical testimony as grasp marks or defensive marks. Defendant claimed that the testimony was relevant because it might have established that Angela was the source of those injuries instead of Defendant. However, that testimony is irrelevant to the charges, aggravated battery and neglect of a dependent, against Defendant. The bruising on H.R.'s arms was not the life-threatening injury that was the subject of the aggravated battery charge against Defendant.

■ Last, Defendant attempted to elicit testimony from Patricia Goodlow that she did not approve of Angela's parenting skills, and had problems with Angela's care of H.R. before Defendant became a member of the household. The trial court excluded the evidence on the basis that the testimony was irrelevant. The trial court correctly excluded this evidence because it had no relevance to the instant charges against Defendant.

The trial court did not err in its rulings on the admissibility of the testimony in question.

## II. SUFFICIENCY OF EVIDENCE OF AGGRAVATED BATTERY

■ Our standard of review in cases where the sufficiency of the evidence is challenged is well-settled. We will affirm the conviction if considering only the probative evidence and reasonable inferences supporting the verdict, we conclude that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *McKinney v. State,* 686 N.E.2d 844, 845 (Ind.1997). We will not reweigh the evidence or assess witness credibility. *Id.*

In order to establish that Defendant committed the crime of aggravated battery against H.R., the State had to show that Defendant knowingly or intentionally in-

flicted an injury creating a substantial risk of death or protracted loss or impairment of the function of a bodily member or organ. *See* Ind.Code § 35–42–2–1–.5. Defendant claims that the State failed to present sufficient evidence that he knowingly or intentionally inflicted the injury.

A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. *See* Ind.Code § 35–41–2–2(a). A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. *See* Ind.Code § 35–41–2–2(b).

 Intent is a mental function. *See James v. State,* 755 N.E.2d 226, 230 (Ind. Ct.App.2001). Absent an admission by the defendant, it must be determined from a consideration of the defendant's conduct and the natural and usual consequences thereof. *Id.* The trier of fact must resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences of what might be expected from that conduct, a showing or inference of the intent to commit that conduct exists. *Id.*

 As for evidence that a defendant engaged in criminal conduct knowingly, our supreme court has held that in murder convictions, the duration and brutality of a defendant's actions, and the relative strengths and sizes of a defendant and victim are proper considerations for the trier of fact. *See Childers v. State,* 719 N.E.2d 1227, 1229 (Ind.1999). Those same factors are pertinent to the present case. In *Childers,* the defendant had challenged the sufficiency of the State's evidence of his knowledge or intent. The supreme court found the culpability evidence to be sufficient stating:

The evidence tends to establish that Wesley was healthy and without noticeable injury Friday afternoon. The defendant, an adult, struck Wesley, a three-year-old child, numerous times with his hand or fist, both on the head and various parts of his body. The blunt force injuries were accomplished by sufficient force to cause severe head trauma, bruise several internal organs, and eventually cause Wesley's death. Given the disparity in size and strength between the defendant and Wesley, and the number and severity of the wounds indicating the considerable force used in striking Wesley, a reasonable jury could have found, beyond a reasonable doubt, that the defendant was aware of a high probability that the blows he struck would result in Wesley's death.

719 N.E.2d at 1230.

 In the present case, H.R. was in Defendant's exclusive care when she sustained her life-threatening injuries. When Angela came home from work for lunch, she observed H.R., who was eating some cereal, and who appeared to be in good physical health. When Defendant met Angela a few hours later in the afternoon, H.R. was unconscious and had suffered a life-threatening injury to her head. Testimony from the neighbors indicated that the two children in Defendant's care were not outside the afternoon H.R. was injured. The medical testimony established that H.R.'s injuries were only a few hours old, and that she could not have played normally after the injuries were inflicted. The medical testimony also established that due to the severity of H.R.'s injuries they could not have been inflicted by a fall from a bunk bed, getting caught in a dog chain, or falling to the ground after running outside, all of which were explanations tendered by the Defendant. Her brain injury was severe enough that the

only possible causes were: 1) being unrestrained in a vehicle involved in a collision, 2) falling from a second story balcony, or 3) injuries inflicted during child abuse.

We conclude that a reasonable jury could have found beyond a reasonable doubt that Defendant both was aware of the high probability that his conduct would lead to substantial risk of death or protracted loss or impairment of the function of a bodily organ, and that he consciously set out to engage in that conduct. The evidence was sufficient to sustain Defendant's conviction for aggravated battery.

### III. SUFFICIENCY OF EVIDENCE OF NEGLECT OF DEPENDENT

Last, Defendant argues that there is insufficient evidence to sustain his conviction of neglect of a dependent for his conduct after inflicting the life-threatening injuries on H.R. while she was in his exclusive care. Defendant contends that the State failed to meet its burden of proving any of the elements of the offense. But most specifically, he claims that the delay in rushing H.R. to the hospital did not deprive her of necessary support and did not cause her serious bodily injury.

A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally deprives the dependent of necessary support commits neglect of a dependent, a Class D felony. Ind.Code § 35–46–1–4(a)(3). "Support," as it relates to the neglect of a dependent, is defined as food, clothing, shelter, or medical care. Ind.Code § 35–46–1–1. The offense is enhanced to a Class B felony if the deprivation results in serious bodily injury. Ind. Code § 35–46–1–4(b)(2).

■■ A parent is charged with an affirmative duty to care for his or her child. *Mallory v. State*, 563 N.E.2d 640,

644 (Ind.Ct.App.1990). "Neglect is the want of reasonable care—that is, the omission of such steps as a reasonable parent would take, such as are usually taken in the ordinary experience of mankind...." *White v. State*, 547 N.E.2d 831, 836 (Ind. 1989) (quoting *Eaglen v. State*, 249 Ind. 144, 150, 231 N.E.2d 147, 150 (1967)).

■■■ In the instant case, the State presented evidence from which a reasonable jury could conclude that Defendant himself inflicted the life-threatening injuries upon H.R. In other cases involving similar challenges to the sufficiency of the evidence this court has held that where the defendant inflicted the injuries upon the dependent the evidence supported an inference that the defendant was subjectively aware that the dependent needed medical care. *See Sanders v. State*, 734 N.E.2d 646, 650–51 (Ind.Ct.App.2000). "When there are symptoms from which the average layperson would have detected a serious problem necessitating medical attention, *it is reasonable for the jury to infer that the defendant knowingly neglected the dependent.*" *Mitchell v. State*, 726 N.E.2d 1228, 1240 (Ind.2000)(emphasis added). The same result obtains here.

Since Defendant was aware of the severity of H.R.'s injuries, he was in a position to understand the urgency of the situation and that medical attention was needed. Defendant argues that he did not deprive H.R. of medical care by going to pick up Angela prior to taking H.R. to the hospital. More particularly, he argues that a delay is not the same as deprivation for purposes of the neglect of a dependent statute.

In *State ex rel. N.K.C.*, 995 P.2d 1, 4 (Utah Ct.App.1999), the Utah Court of Appeals adopted the reasonable parent standard in a case involving alleged neglect of a dependent by failing to obtain timely medical care after a life-threatening injury.

The court noted that in order to determine whether the mother's conduct constituted medical neglect under the facts of that case, her conduct must be squared against the appropriate conduct of a reasonable parent, guardian, or custodian who finds a child in like condition. *Id.*

Our supreme court has already adopted the reasonable parent standard in cases involving neglect of a dependent for failing to timely obtain medical care and this court has applied that standard in previous cases. *See White v. State*, 547 N.E.2d 831, 836 (Ind.1989); *Eaglen v. State*, 249 Ind. 144, 150, 231 N.E.2d 147, 150 (1967); *Mallory v. State*, 563 N.E.2d 640, 644 (Ind.Ct. App.1990).

In *Fabritz v. State*, 30 Md.App. 1, 351 A.2d 477, 481 (Md.Ct.Spec.App.1976), the court stated in part as follows:

> The determination of criminal culpability by the jury thus rested upon whether they found [the defendant's] delay in seeking medical attention for [her child] was poor judgment, though excusable as parental discretion, ... neglect˙ (which was not charged), or incation[sic] amounting to what the jurors 'commonly understood' to be cruel or inhumane treatment.(citations omitted).

The court favorably quoted the trial court's comments to the jury as follows:

> Somewhere and the Court is not prepared to say to you where that line is to be drawn, some where in the relative descending scale actions become abuse as opposed to neglect. Whether the Defendant's conduct was actuated by malice or evil intent and whether you find it was ... within the framework of this case, either neglect or abuse, is the question you ladies and gentlemen have to resolve.

*Id.*

In the present case, the question of whether the Defendant's actions were rea-sonable was a question for the jury, the trier or fact. We will not reweigh the evidence. The jury found that under the facts and circumstances of the present case that a fifteen-minute delay was a de-privation of medical care. It is entirely plausible for the jury to have found that a reasonable parent would not have done as Defendant did—drive past a hospital in order to pick up the child's mother from work before taking an unconscious but breathing child back to the hospital.

 Last, the Defendant claims that there is insufficient evidence that any de-lay in seeking treatment resulted in seri-ous bodily injury. Defendant challenges the sufficiency of the evidence because medical personnel were not able to quanti-fy the physical damage sustained by H.R. due to the fifteen-minute delay in seeking care.

The record reveals by his own testimo-ny, that Defendant observed that H.R. was unconscious but breathing when he left the house, and when he stopped to pick up Angela from work. However, by the time that H.R. was received by emergency room personnel, she had stopped breath-ing. Defendant testified that he had to drive past the hospital in order to pick up Angela from her place of employment, be-fore driving back to the hospital. The medical testimony revealed that the sooner treatment is sought for patients suffering these kinds of injuries, the better the out-come. Any amount of time the brain goes without oxygen causes brain cells to die. Today, H.R. suffers from permanent brain damage among other things. There is suf-ficient evidence from which a jury could conclude that the deprivation of medical care caused H.R. serious bodily injury.

The evidence is sufficient to sustain the conviction of neglect of a dependent result-ing in serious bodily injury.

*CONCLUSION*

The trial court did not err in excluding the testimonial evidence as that evidence had no relevance to charges against Defendant. Further, the evidence was sufficient to support Defendant's convictions of aggravated battery and neglect of a dependent.

Affirmed.

RILEY, J., and KIRSCH, J., concur.