**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

May 30 2012, 8:43 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN C. BOHDAN**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| KAMAL EL-ADNANI, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1109-CR-463 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D05-1009-FB-149

**May 30, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Kamal El-Adnani appeals his convictions and sentence for Battery Resulting in Serious Bodily Injury,[1] a class B felony and Neglect of a Dependent Resulting in Serious Bodily Injury,[2] a class B felony. More particularly, El-Adnani argues that the evidence was insufficient to sustain his convictions. Additionally, El-Adnani essentially argues that the trial court abused its discretion by identifying improper aggravating factors. Finding sufficient evidence and no other error, we affirm the decision of the trial court.

## FACTS

In May 2009, Toni Campbell and El-Adnani met through a social networking site and dated until August 2010, when El-Adnani moved in with Toni and her two children, five-year-old A.C. and two-year-old G.C. El-Adnani was a perfectionist who thought that Toni was too permissive with the children.

In September 2010, El-Adnani was not employed. On September 15, 2010, the children went to their daycare. El-Adnani arrived in the afternoon to pick up the children because Toni had an employment function to attend. When G.C. saw El-Adnani coming for him, he looked at his care provider, cried, and said, "pease, no Kamal." Tr. p. 305. G.C. had no accidents at daycare that day, had no apparent injuries, and had acted normally throughout the day.

---

[1] Ind. Code § 35-42-2-1(a)(4).

[2] Ind. Code § 35-46-1-4(b)(2).

2

At approximately, 5:45 p.m., Toni spoke on the telephone with El-Adnani, A.C., and G.C., who communicated normally with his mother. G.C. had eaten pizza for dinner, and he, El-Adnani, and A.C. were watching a movie. At approximately 6:30 p.m., El-Adnani called Toni and her mother to tell them that he was taking G.C. to the hospital. El-Adnani explained that G.C. had fallen asleep while they were watching the movie and that El-Adnani was unable to wake him.

El-Adnani drove G.C. to Parkview Hospital in Fort Wayne. When G.C. arrived at the hospital, he was unconscious and was having difficulty breathing. G.C. had visible injuries to his forehead, chin, and nose. Because a history is the most significant tool in identifying and treating injuries, the emergency room nurse asked El-Adnani what had happened to G.C. El-Adnani denied knowing anything about any injuries that G.C. could have sustained and repeated the same story that he had told Toni and Toni's mother, namely, that G.C. had fallen asleep watching the movie and became unresponsive.

G.C. began having seizures as he was being examined. Time was of the essence because he was not breathing. Because El-Adnani's version of events was not consistent with G.C.'s condition and not knowing the source of G.C.'s distress, the treating physicians performed a battery of tests, including brain scans, blood tests, and a chest x-ray. G.C. was placed on a ventilator and given anti-seizure medication.

Doctors eventually discovered that G.C. had an intracranial injury that was so severe that his brain was swelling and moving out of its normal position. This injury was life-threatening and would have produced immediate symptoms, including significant

3

pain. G.C. was bleeding massively around his brain and had moderate hemorrhaging on both his retinas. G.C.'s injuries were acute and had just been inflicted the day he was taken to the hospital. Surgeons removed a portion of the toddler's skull to relieve the pressure on his brain.

Once the treating physicians had discovered the extent of G.C.'s injuries, El-Adnani was again asked to provide a history because G.C.'s injuries were severe and not consistent with simply falling asleep. El-Adnani again denied knowing anything about G.C.'s injuries and repeated his version of events.

On September 16, 2010, as G.C. was being treated for his injuries, El-Adnani was interviewed by two police officers from the Fort Wayne Police Department. El-Adnani acknowledged that, after they had spoken to Toni on the telephone, G.C. was not out of his sight except for a brief period when El-Adnani left to get a diaper and wipes for G.C. El-Adnani stated that G.C. was in the same position where he had left him when he returned with the changing supplies.

El-Adnani repeatedly denied that he knew anything about how G.C. had sustained his injuries. The officers informed El-Adnani that G.C. was fighting for his life, but El-Adnani assured the officers that he had told them everything he knew. El-Adnani also told that officers that he did not want to be linked to a crime. El-Adnani was free to leave after the interview had concluded.

Police officers spoke with G.C.'s neurosurgeon and learned that someone with G.C.'s injuries could not have been speaking on the telephone. The officers then

4

confirmed with Toni the time when she had spoken to G.C. on September 15. El-Adnani was arrested.

After El-Adnani's arrest, he was interviewed a second time. El-Adnani was informed that if he did not assist the police, G.C. might die. El-Adnani maintained that he knew nothing about G.C.'s injuries and specifically denied that G.C. had fallen down the stairs.

G.C. was kept in a medical coma for one week. He was in the intensive care unit at Parkview Hospital for three weeks until he was transported to Methodist Hospital in Indianapolis for an additional three weeks. G.C. underwent four surgeries during the course of his rehabilitation and is expected to undergo at least one additional surgery. G.C. continues to require speech, occupational, and physical therapies. G.C. experiences a lack of impulse control and has permanent scarring. The full extent of G.C.'s brain damage is unknown at this time.

On September 22, 2010, the State charged El-Adnani with class B felony battery resulting in serious bodily injury and class B felony neglect of a dependent resulting in serious bodily injury. On October 12, 2010, Child Protective Services interviewed El-Adnani. During that interview, El-Adnani reported for the first time that when he went to get G.C.'s changing supplies, he heard what sounded like a fall and found G.C. on the landing that separated the first five stairs from the remainder of the staircase. According to El-Adnani, G.C. had fallen down the first five stairs, which were carpeted and padded.

El-Adnani's jury trial took place on July 12, 13, and 14, 2011. Dr. Tara Harris, a board-certified pediatric child abuse physician who is specifically familiar with pediatric head trauma, testified that G.C.'s injuries were consistent with abusive head trauma as a result of having been shaken and then impacting a hard surface. Dr. Harris based her opinion on the fact that G.C. had sustained injury to the brain tissue itself, something that would require a "violent" amount of force to inflict. Tr. p. 396.

Additionally, Dr. Harris found the fact that G.C. had moderate retinal hemorrhaging in both eyes to be significant. More particularly, children who have accidental injuries may sustain a small amount of retinal hemorrhaging in either eye, but to have a moderate amount in both eyes is consistent with the rapid acceleration and deceleration of being shaken.

Finally, Dr. Harris knew that El-Adnani's version of events, even the version in which G.C. fell down the stairs, did not match G.C.'s injuries because a child of G.C.'s stature could not generate enough force by falling to result in such massive cranial injury. To sustain such injuries, G.C. would have had to have been launched or propelled down the stairs by some separate force.

Dr. Harris's opinion that G.C.'s injuries were caused by nonaccidental head trauma was shared by the emergency room physician who treated G.C., G.C.'s neurosurgeon, and G.C.'s pediatric intensive care physician. At the conclusion of El-Adnani's trial, the jury found him guilty as charged.

6

The trial court held a sentencing hearing on August 19, 2011. The trial court found the absence of a criminal record to be a mitigating circumstance. The trial court declined to give any mitigating or aggravating weight to the fact that El-Adnani might be subject to deportation.

In aggravation, the trial court noted G.C.'s "extreme youth," insofar as he was only two years of age, which was significantly younger than the fourteen years required under the battery statute. Sent. Tr. p. 14-15. As additional aggravating circumstances, the trial court observed that El-Adnani was G.C.'s caregiver at the time of the offenses and was, therefore, in a position of trust and recognized the extreme pain, unconsciousness, and disfigurement that G.C. had suffered. The trial court determined that the aggravating factors outweighed the mitigating ones and sentenced El-Adnani to twelve years imprisonment for each conviction to be served concurrently, for a total executed terms of twelve years. El-Adnani now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

#### A. Standard of Review

In reviewing a challenge to the sufficiency of the evidence, this Court neither reweighs the evidence nor assesses the credibility of witnesses. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). Instead, we consider only the evidence favorable to the verdict and all reasonable inferences drawn therefrom. Id. This Court will affirm the

conviction unless "no rational factfinder" could have found the defendant guilty beyond a reasonable doubt. Clark v. State, 728 N.E.2d 880, 887 (Ind. Ct. App. 2000).

### B. Battery Resulting in Serious Bodily Injury

To secure a conviction for class B felony battery resulting in serious bodily injury, the State was required to prove beyond a reasonable doubt that El-Adnani, a person at least eighteen years old, knowingly or intentionally touched G.C., who was less than fourteen years old, in a rude, insolent, or angry manner, resulting in serious bodily injury. Ind. Code § 35-42-2-1(a)(4).

El-Adnani does not dispute that G.C. suffered serious bodily injury. Rather, El-Adnani argues that the State failed to prove that he was the one who battered G.C. Generally, the "[e]lements of offenses and identity may be established entirely by circumstantial evidence and logical inferences drawn therefrom." Bustamante v. State, 557 N.E.2d 1313, 1317 (Ind. 1990).

In this case, G.C.'s injuries were inflicted after he spoke with his mother on the telephone because G.C.'s intensive care physician informed the police that someone with a severe intracranial injury like G.C. had sustained could not speak normally. Tr. p. 341. El-Adnani confirmed that no one apart from himself and the children were present in the home that night. Ex. 28 at 10:23-:25, 23:17, 1:10:30. Additionally, Dr. Harris found the fact that G.C. had moderate retinal hemorrhaging in both eyes to be significant, inasmuch as children who have accidental injuries may sustain a small amount of retinal hemorrhaging in either eye, but having a moderate amount in both eyes is consistent with

being shaken.  Tr. p. 399-400.  Likewise, Dr. Harris stated that G.C.'s injuries were consistent with abusive head trauma as a result of having been shaken and then impacting a hard surface.  Id. at 411-12.

Furthermore, Dr. Harris testified that El-Adnani's version of events, even the version in which G.C. fell down the carpeted and padded stairs, was inconsistent with G.C.'s injuries because a child of G.C.'s stature could not generate enough force by falling to result in such massive cranial injury.  Tr. p. 401-02, 404.  Accordingly, under these facts and circumstances, a reasonable jury could conclude that El-Adnani battered two-year-old G.C.  Therefore, this argument fails.

### C. Neglect of a Dependent

To convict El-Adnani of class B felony neglect of a dependent resulting in serious bodily injury, the State had to prove beyond a reasonable doubt that El-Adnani, having the care of G.C., did knowingly or intentionally, place G.C. in a situation endangering his life or health, resulting in serious bodily injury.  Ind. Code § 35-46-1-4(b)(2).  El-Adnani's sole challenge to the evidence supporting this conviction is that there was no evidence that he delayed taking G.C. to the hospital.

Here, when G.C. was brought to the hospital, he was unconscious and not breathing properly.  Tr. p. 232.  In such situations, time is of the essence, and an accurate history of what has occurred is the most significant tool in assessing and treating injury.  Id. at 233.  Nevertheless, despite being repeatedly asked El-Adnani never divulged to emergency personnel any possible source of G.C.'s injuries.  Id. at 233, 249-50.  Because

9

of El-Adnani's refusal to divulge any information, G.C.'s physicians were forced to run multiple tests to determine the source of the toddler's distress. Id. at 248. From this evidence, the jury could have reasonably concluded that El-Adnani's refusal to cooperate with emergency personnel delayed G.C.'s treatment when G.C.'s life was endangered. See Lush v. State, 783 N.E.2d 1191, 1198 (Ind. Ct. App. 2003) (holding that the reasonableness of any delay in medical treatment caused by a defendant is a question for the jury to determine). Accordingly, this argument also fails.

## II. Sentence

El-Adnani challenges his executed twelve-year sentence. At the outset, we note that although El-Adnani seems to invoke this Court's authority to review and revise sentences under Indiana Appellate Rule 7(B), he essentially argues that the trial court abused its discretion when it sentenced him. Indeed, El-Adnani offers no argument regarding why his sentence is inappropriate in light of the nature of the offenses, which is necessary for a Rule 7(B) review. This Court has clarified that a review for an abuse of the trial court's discretion in sentencing a defendant and a review pursuant to Rule 7(B) are separate and distinct types of sentencing review. See King v. State, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008) (observing that "interspersed within King's inappropriate sentence argument are references to the abuse of discretion standard . . . As our Supreme Court has made clear, inappropriate sentence and abuse of discretion claims are to be analyzed separately"). Consequently, we will address El-Adnani's argument as an abuse of discretion claim.

10

El-Adnani contends that the trial court abused its discretion by identifying improper aggravating factors. Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007) clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). A trial court may abuse its discretion by: (1) failing to enter a sentencing statement; (2) entering a sentencing statement that is not supported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration by the defendant; or (4) the trial court's reasons for imposing a particular sentence are improper as a matter of law. Id. at 490-91.

El-Adnani maintains that the trial court improperly found G.C.'s age to be an aggravating factor, insofar as "the child's age, being less than fourteen, was a specified element of the Count I Battery charge, and is also implicated as an element of Count II Neglect of a Dependent as it relates to legal dependency." Appellant's Br. p. 14.

While an element of an offense may not be used an aggravating factor, a trial court may consider the nature and circumstances of the crime as an aggravating circumstance. Kile v. State, 729 N.E.2d 211, 214 (Ind. Ct. App. 2000). In Kile, the defendant challenged the trial court's use of the victim's tender age of six years as an aggravating factor, inasmuch as the age of the victim is an element of the neglect statute, to which he had pleaded guilty. Id. A panel of this Court determined that although the neglect statute required that the victim be less than eighteen years of age, it did not require that the victim be as young as six years old. Id. Accordingly, the Kile Court held that "the trial

11

court did not err by using the particularized factual circumstances of [the] case, namely [the victim's] young age, as an aggravating factor." Id.

Similarly, in this case, the battery statute required that the victim be less than fourteen years old and the neglect statute required that the victim be less than eighteen years old. I.C.§ 35-42-2-1(a)(4); I.C. § 35-46-1-4(b)(2). G.C. was only two years old when he sustained his life-threatening injuries, which is well below the age required by either statute. Therefore, the trial court did not err when it considered G.C.'s tender age an aggravating factor.

Next, El-Adnani argues that the trial court improperly considered G.C.'s injuries as an aggravating factor. More particularly, El-Adnani maintains that G.C.'s injuries were improperly considered because they are speculative and an element of both offenses.

A trial court may consider whether the harm to the victim was greater than necessary to prove the offense. Ind. Code § 35-38-1-7.1(a)(1)(B). Here, the trial court noted that the full extent of G.C.'s injuries was not known. Nevertheless, the trial court accepted the State's argument that the harm to G.C. was greater than that necessary to accomplish the offenses, insofar as the evidence showed that El-Adnani caused G.C. extreme pain, unconsciousness, and protracted loss of function. Sent. Tr. p. 15-16. Each of these injuries qualifies as serious bodily injury. Ind. Code § 35-41-1-25. The State was only required to prove two separate types of serious bodily injury to sustain the instant convictions. I.C. § 35-42-2-1; I.C. § 35-46-1-4. Thus, the harm that El-Adnani

12

inflicted upon G.C. was in excess of that required to prove the offenses. Moreover, the trial court's comment that the true extent of G.C.'s injuries was unknown further complimented its finding that El-Adnani had injured the toddler above and beyond what was necessary to accomplish the offenses. Consequently, the trial court did not err by considering the harm to the victim that was greater than what was necessary to accomplish the offenses as an aggravating factor.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.