## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 30 2020, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Kunz
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Keith Michael Yox,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 30, 2020

Court of Appeals Case No.
19A-CR-2879

Appeal from the Marion Superior Court

The Honorable James Kevin Snyder, Commissioner

Trial Court Cause No.
49G02-1801-F1-2363

**Crone, Judge.**

## Case Summary

Keith Michael Yox appeals his convictions, following a jury trial, for two counts of level 1 felony child molesting. He contends that the trial court abused its discretion in denying his motion for continuance made on the morning of trial, and that the State presented insufficient evidence to support his convictions. Finding no abuse of discretion and sufficient evidence, we affirm.

## Facts and Procedural History

In August 2001, twenty-eight-year-old Yox began a relationship with eighteen-year-old Lena Bandy. Yox and Bandy were married in 2004, and had one daughter, E.Y., born in June 2009. The couple divorced in December 2012. Following the divorce, Yox had visitation with E.Y. every Thursday night and every other weekend.

On Thursday, February 18, 2016, six-year-old E.Y. spent the night at Yox's house. Yox and E.Y. slept together in the living room on a mattress. When they went to bed that night, E.Y. did not have any clothes on. Yox also did not have any clothes on. At some point, E.Y. found herself on top of Yox. E.Y. remembers that, as she tried to sleep, Yox was touching her "butt" with his penis. State's Ex. 28.[1] Yox touched the "inside" of her "butt" and it "hurt." *Id*.

---

[1] State's Exhibit 28 is the video recording of an interview of E.Y. by a child forensic interviewer. The exhibit was published to the jury but not admitted into evidence. Tr. Vol. 3 at 73.

[4]     The following day, Bandy went to pick up E.Y. from school. When Bandy arrived, E.Y. would not come out of the bathroom because she had "an accident in her underwear" and wanted Bandy to come in to help her. Tr. Vol. 2 at 147. Bandy went in and realized that E.Y. had "pooped on herself." *Id.* As Bandy tried to clean E.Y., she could tell that E.Y. was in pain because E.Y. kept "flinching" and would push Bandy's hands away from her vaginal area and buttocks. *Id.* Bandy observed that those areas were "inflamed and bleeding." *Id.* Bandy knew that it was "more than just [her] cleaning [E.Y.]" that was causing pain. E.Y. disclosed that Yox had hurt her, so Bandy took E.Y. to an urgent care and then to the hospital. *Id.* at 148.

[5]     E.Y. was seen by forensic nurse Julia Weems. Nurse Weems conducted a three-hour sexual assault exam. Weems noticed erythema (redness) on E.Y.'s labia majora and an abrasion on her anus running from the anal fold to the outside of the anus. *Id.* at 177-78. Weems swabbed E.Y.'s external and internal genitalia, inner thighs, and anus, and collected all of E.Y.'s clothing, including her underwear.

[6]     Testing on the internal genital swab and E.Y.'s underwear indicated the presence of seminal fluid. DNA profile testing confirmed that Yox was the "contributor" of the sperm found on the internal genital swab. *Id.* at 249. In addition, serology and DNA tests performed on E.Y.'s underwear confirmed that the DNA from the seminal fluid belonged to Yox. Regarding the anal swab, testing revealed a male presence, but there was insufficient DNA to develop a profile.

On January 22, 2018, the State charged Yox with two counts of level 1 felony child molesting. After numerous continuances had been granted, a jury trial was set for August 12, 2019. That morning, the court congested Yox's trial off the court's calendar for another jury trial, and the court reset Yox's jury trial for October 15. On October 3, the parties affirmed that trial date during a pretrial conference. The jury trial began as scheduled on October 15, 2019. At the outset, Yox made an oral motion for continuance, which the trial court denied. The jury subsequently found Yox guilty as charged. The trial court sentenced him to concurrent terms of thirty-five years, with five years suspended and two years of probation on each count. This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in denying Yox's oral motion for continuance made on the morning of his jury trial.

Yox first contends that the trial court abused its discretion in denying his oral motion for continuance made on the morning of his jury trial. Rulings on nonstatutory motions for continuance lie within the trial court's discretion. *Maxey v. State*, 730 N.E.2d 158, 160 (Ind. 2000). "We will not disturb the trial court's decision absent a clear demonstration of abuse of discretion resulting in prejudice." *Blackburn v. State*, 130 N.E.3d 1207, 1210 (Ind. Ct. App. 2019). "An abuse of discretion occurs only where the trial court's decision is clearly against the logic and effect of the fact and circumstances before the court." *Shoultz v. State*, 995 N.E.2d 647, 657 (Ind. Ct. App. 2013), *trans. denied*. We

further observe that continuances to allow more time for trial preparation are generally disfavored in criminal cases. *Zanussi v. State*, 2 N.E.3d 731, 734 (Ind. Ct. App. 2013). The appellant must overcome a strong presumption that the trial court properly exercised its discretion. *Evans v. State*, 855 N.E.2d 378, 386 (Ind. Ct. App. 2006), *trans. denied* (2007). Additionally, the appellant must make a specific showing of how he was prejudiced as a result of the trial court's denial of his motion. *Id*. at 386-87.

[9] Here, on the morning of trial, defense counsel made an oral request for a continuance. Specifically, Yox's counsel indicated that he was not prepared for trial because Yox's jury trial had been the "second choice" trial setting until the day prior. Tr. Vol. 2 at 5. The trial court reminded defense counsel that there is always a chance that first choice "falls off" and that the second-choice setting must be ready to proceed. *Id*. The court then inquired, "[S]o, what are you not ready to proceed on, because this case has been congested the day of jury before, on August 12th." *Id*. Counsel simply responded, "It would have been lovely to have gone over the evidence one last time with Mr. Yox and kind of make sure that he understood what the arguments were going to be, and the direction the Defense was going …." *Id*. Counsel then conceded that he had, in fact, recently gone over everything with Yox before the original August 12 trial date, but quipped, "It's always nice to give the client refreshers. They – they forget – they tend to forget things." *Id*. at 6. Yox's counsel made no other assertions as to why a continuance was necessary or how his client would be prejudiced in the event of a denial. The trial court denied Yox's last-minute

oral motion, noting, "This case is a year and nine months old …. It's been prepped for trial before." *Id.*

[10] Yox has failed to demonstrate that the trial court's decision in this regard constituted an abuse of discretion. Although Yox now asserts that a continuance was necessary for him to review the "supplemental notice of discovery compliance" filed by the State a month before trial, Appellant's Reply Br. at 5, Yox made no such argument to the trial court, and therefore it, is waived. *See Butler v. State*, 140 N.E.3d 870, 875-76 (Ind. Ct. App. 2019) (finding issue waived on appeal because defendant's failure to raise below deprived trial court of opportunity to address question or develop record), *trans. denied* (2020). Moreover, other than bald assertions, Yox makes no specific showing on appeal that he suffered prejudice as a result of the trial court's denial of his motion for continuance. Accordingly, we find no abuse of discretion.

## Section 2 – The State presented sufficient evidence to support the convictions.

[11] Yox challenges the sufficiency of the evidence to support his convictions. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.* In short, if the testimony believed by the trier of fact is

enough to support the conviction, then the reviewing court will not disturb it. *Id*. at 500.

[12] "A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits child molesting …." Ind. Code § 35-42-4-3(a). "Sexual intercourse" means an act that includes any penetration of the female sex organ by the male sex organ. Ind. Code § 35-31.5-2-302. "Other sexual conduct" means an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object. Ind. Code § 35-31.5-2-221.5. The offense of child molesting is a level 1 felony if it is committed by a person at least twenty-one (21) years of age. Ind. Code § 35-42-4-3(a)(1).

[13] Yox asserts that the State presented insufficient evidence of his intent, namely that the State failed to establish that he "knowingly" performed sexual intercourse and other sexual conduct with E.Y. A person engages in conduct "knowingly" if, "when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "Intent is a mental function." *Lush v. State*, 783 N.E.2d 1191, 1196 (Ind. Ct. App. 2003). Absent an admission by the defendant, intent must be determined from a consideration of the defendant's conduct and the natural and usual consequences thereof. *Id*. "The trier of fact must resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the

person's conduct and the natural consequences of what might be expected from that conduct, a showing or inference of the intent to commit that conduct exists." *Id.* The intent element of child molesting may be established by circumstantial evidence. *Bowles v. State*, 737 N.E.2d 1150, 1152 (Ind. 2000).

[14] Here, laboratory testing on the internal genital swab and E.Y.'s underwear indicated the presence of seminal fluid. DNA profile testing confirmed that Yox was the "contributor" of the sperm found on the internal genital swab. Tr. Vol. 2 at 249. In addition, serology and DNA tests performed on E.Y.'s underwear confirmed that the DNA from the seminal fluid belonged to Yox. E.Y. had redness on her labia majora and an abrasion on her anus running from the anal fold to the outside of the anus. Six-year-old E.Y. told the child forensic interviewer that Yox "hurt her butt," and she circled a penis on an anatomical drawing to indicate the body part that Yox used to hurt her. State's Ex. 28.

[15] Yox appears to concede that sufficient evidence establishes that he performed sexual intercourse or other sexual conduct with E.Y., but he asserts that the State failed to prove that he acted knowingly. Specifically, he suggests that it was just as likely that he accidentally performed sexual intercourse or other sexual conduct with E.Y. because the State failed to show that he "was awake" when he ejaculated on and/or into E.Y.'s genitals and anus. Appellant's Br. at 14. Yox's assertion is simply a request that we reweigh the evidence in his favor, which we will not do. As noted by the State, Yox engaged in sexual touching and conduct long enough and intensely enough to reach the point of ejaculation. State's Br. at 16. We agree with the State that a jury could

reasonably infer from the surrounding circumstances (Yox lying naked with his naked young daughter on top of him) that Yox acted knowingly. In other words, the jury could reasonably infer from Yox's conduct and the natural consequences of what might be expected from that conduct, that he possessed the requisite intent to commit that conduct. The State presented sufficient evidence that Yox knowingly performed sexual intercourse and other sexual conduct with E.Y. We affirm his convictions.

Affirmed.

Bailey, J., and Altice, J., concur.